IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| RUKISHA CRAWFORD,<br><br>Plaintiff,<br><br>v.<br><br>DEKALB COMMUNITY UNIT<br>SCHOOL DISTRICT NO. 428,<br><br>Defendant. | Case No. 3:22-cv-50256<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rukisha Crawford, a former substitute teacher with Clinton Rosette Middle School, alleges that Defendant Dekalb Community Unit School District No. 428 (the "School District") violated her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et. seq. See* First Amended Compl. ("FAC"), Dkt. 17.

The School District moves to dismiss the FAC under Federal Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6). Dkts. 20, 20-1. For the following reasons, the Court grants in part and denies in part the School District's motion under Federal Rule of Civil Procedure 12(b)(6).

---

[1] The School District does not pursue an argument under Federal Rule of Civil Procedure 12(b)(1). So, the argument is forfeited. *See Perry v. Sullivan*, 207 F.3d 379, 383 (7th Cir. 2000). Even if the argument were not forfeited, the argument would not succeed because the Court has subject matter jurisdiction under 28 U.S.C. § 1331.

1

## BACKGROUND

Ms. Crawford is an African American woman who "suffers from hyperthyroidism stemming from the removal of her thyroid gland due to thyroid cancer." FAC ¶¶ 12, 13. She began working for the School District as a substitute teacher in 2008. *Id.* at ¶ 16. In 2016, Ms. Crawford began her most recent position as a Building Substitute Teacher at Clinton Rosette Middle School. *Id.* at ¶ 17.

Fast forward some four years to the summer of 2020 when the United States is grappling with not only the COVID-19 pandemic but also the unrest after the murder of George Floyd.

Ms. Crawford alleges that in June 2020, she attended a "Community Forum on Race Relations in the County" hosted by Dekalb County. *Id.* at ¶ 35. The School Board President Sarah Moses and School Board members David Seymour and Samantha McDavid also attended the forum. *Id.* at ¶ 37. At the forum, Ms. Crawford "made a public statement that she and other African-American employees" at Clinton Rosette Middle School "had been subject to racial discrimination." *Id.* at ¶ 38. Ms. Crawford reiterated her comments at another forum on the same topic later that month, which Ms. Moses, Mr. Seymour, and Ms. McDavid also attended. *Id.* at ¶¶ 39–40.

Ms. Crawford asserts that "one example of such discrimination" was that she was not offered "long-term substitute teaching assignments, which included a higher compensation rate" than she had been receiving. *Id.* at ¶ 41. Instead, such positions were offered to non-African-American substitute teachers. *Id.* at ¶¶ 41–42. She also

2

alleges that the after-school dance program that Ms. Crawford ran with a "paraprofessional who was also African-American" did not "receive the same support" from the School District as other programs received. *Id.* at ¶ 43.

In July 2020, Ms. Crawford provided the School District with a letter from her healthcare provider, Laura Jorgensen, explaining that she was "under Jorgensen's care for treatment of an underlying health condition." *Id.* at ¶ 21. The next month, the School District's Human Resource Representative, Benjamin Sloniker, emailed Ms. Crawford stating that he had "found your doctor's note that I received," and requested further information from Ms. Crawford "about the underlying condition and what accommodation was being requested." *Id.* at ¶ 22.

Ms. Jorgensen then faxed Ms. Crawford's "ADA Medical Certification for Accommodation" to the School District. *Id.* at ¶ 23. The Certification explained that Ms. Crawford "would benefit from being able to teach remotely," and that Ms. Crawford would likely need the reasonable accommodation for one year. *Id.* at ¶¶ 23–24. Ms. Jorgensen also noted that Ms. Crawford was not suffering from a physical or mental impairment, and when prompted "[w]hat limitations are interfering with job performance, and how do they affect the employee's ability to perform the job functions," Ms. Jorgensen simply answered: "N/A." Dkt. 20-2, at 2.[2]

---

[2] "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (internal citation and quotations omitted). The Certification is both central to Ms. Crawford's ADA claim and mentioned in her complaint. *See, e.g.*, FAC ¶¶ 23–24. Thus, the Court can consider it.

3

The School District denied Ms. Crawford's request for accommodation. FAC at ¶ 26.

On August 27, 2020, Ms. Crawford provided the School District with another letter from Ms. Jorgensen, which further explained that Ms. Crawford "has hyperthyroidism due to removal of thyroid from thyroid cancer," and "encouraged" the School District to contact Ms. Jorgensen if the School District had any questions. FAC at ¶ 25. Ms. Crawford also provided a revised request for accommodation. *Id.* at ¶ 26. The revised request explained that Ms. Crawford "was requesting the accommodation of teaching remotely due to her thyroid cancer, as her condition placed her at an elevated risk of health complications due to the COVID-19 pandemic." *Id.*

The School District again refused to grant Ms. Crawford's request for accommodation, and that same day, the School District placed Ms. Crawford on a "Last Chance Agreement" because of her "inability to work in person." *Id.* at ¶¶ 28, 29. Ms. Crawford alleges that the School District, despite denying her request, granted the same accommodation to the Band Director, Brian Balika. *Id.* at ¶ 33.

On September 2, 2020, the School District informed Ms. Crawford that her "employment was terminated effective August 31, 2020, pending Board of Education approval on September 15, 2020." *Id.* at ¶ 44. On September 16, 2020, the School District told Ms. Crawford that the Board of Education had approved her termination. *Id.* at ¶ 45.

4

Ms. Crawford filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on November 9, 2020. *Id.* at ¶ 2a. In the charge, Ms. Crawford alleges that she faced discrimination from August 21, 2020, through August 31, 2020. Dkt. 20-4, at 1.[3] She continued, explaining that she "spoke up regarding and against racism during Respondent's public forum." *Id.* Additionally, the School District, despite being aware of her disability, rejected her request for an accommodation, placed her on a Last Change Agreement, and ultimately terminated her employment. *Id.* The EEOC issued Ms. Crawford a Notice of Right to Sue on April 13, 2022. FAC ¶ 2b.

Ms. Crawford now asserts four claims–two under the ADA and two under Title VII. *Id.* In Count I, she alleges that the School District violated the ADA by discriminating against her based on her disability when the School District refused to accommodate her disability and terminated Ms. Crawford because of her disability and her request for an accommodation. *Id.* at ¶¶ 46–51. In Count II, Ms. Crawford repackages her claim in Count I and alleges that, in violation of the ADA, the School District retaliated against Ms. Crawford because of her disability by "unreasonably refusing to provide a reasonable accommodation" and by terminating her employment "due to her disability and her request for a reasonable accommodation." *Id.* at ¶¶ 52–56. Ms. Crawford alleges in Count III that, in violation of Title VII, the School District denied Ms. Crawford an equal opportunity for employment because of her race. *Id.* at

---

[3] The Court can consider the EEOC charge attached to the School District's motion to dismiss. *See Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 989 n.2 (N.D. Ill. 2010).

¶¶ 58–64. In Count IV, Ms. Crawford alleges that the School District retaliated against her for "opposing racial discrimination in the workplace." *Id.* at ¶¶ 65–71.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires only that a plaintiff's complaint contain a short and plain statement establishing the basis for the claim and the Court's jurisdiction, as well as prayer for the relief sought. Fed. R. Civ. P. 8(a). According to the Supreme Court, this means that the complaint's factual assertions, rather than any legal conclusions, must raise the plausible inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Reasonable inferences are drawn in favor of the plaintiff. *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016). The defendant, as the moving party, bears the burden of establishing that the complaint's allegations, taken as true, are insufficient. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). A court need not ignore allegations in the complaint that undermine the plaintiff's claim. *Slaney v. Int'l Amateur Athletic Fed.*, 244 F.3d 580, 597 (7th Cir. 2001).

## ANALYSIS

As discussed below, Ms. Crawford's ADA claims are dismissed without prejudice (Counts I and II). Ms. Crawford's Title VII discrimination claim (Count III) can proceed solely with respect to her termination. Lastly, Ms. Crawford's Title VII retaliation claim (Count IV) can proceed as alleged.

I. Ms. Crawford fails to state a claim of disability discrimination for the School District's alleged failure to accommodate her disability.

To establish a claim under the ADA for failure to accommodate, a plaintiff must allege that: "(1) she is a qualified individual with a disability (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). An employer's duty to provide a reasonable accommodation is "triggered only in situations where an individual who is qualified on paper requires an accommodation" to be able to perform the "essential functions of the job." *Brumfield v. City of Chi.*, 735 F.3d 619, 632 (7th Cir. 2013).

An employer "need not accommodate a disability that is irrelevant to an employee's ability to perform the essential functions of her job" because "the employee is fully qualified for the job without accommodation and therefore is not entitled to an accommodation in the first place." *Id.*

Ms. Crawford's support for her claim of accommodation comes from the Certification prepared by Ms. Jorgensen. *See* FAC ¶¶ 23–27. The Certification states that Ms. Crawford does not have a "physical or mental impairment." Dkt. 20-2, at 2. It also includes the following questions and answers:

- What limitations are interfering with job performance, and how do they affect the employee's ability to perform the job functions?
    - N/A

- What adjustments to the work environment or position responsibilities would enable the employee to perform the essential functions of that position?
    - If available, recommend remote learning[.]

*Id.* (format altered for clarity).

7

Ms. Jorgenson explained that there were no applicable limitations interfering with Ms. Crawford's job performance. *Id.* And although Ms. Jorgensen recommended remote teaching, "if available," to prevent Ms. Crawford from getting ill, this recommendation cannot form the basis of a failure to accommodate claim because Ms. Jorgenson specifically found that Ms. Crawford had no limitations interfering with her job performance. *Id.*; *see Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 852 (7th Cir. 2015); *Brumfield*, 735 F.3d at 633.

Accordingly, Ms. Crawford has not plausibly alleged that she had any physical or mental impairment requiring an accommodation that the School District failed to meet. Count I of Ms. Crawford's FAC is dismissed without prejudice.

II. Ms. Crawford's ADA retaliation claim is a repackaged version of her ADA discrimination claim and is equally inadequate.

The School District argues that Ms. Crawford failed to exhaust this claim with the EEOC and that, even if she did, she failed to state a claim for retaliation under the ADA. Dkt. 20-1, at 8–10. But the Court need not resolve whether her ADA retaliation claim falls within the scope of the charge of discrimination she filed with the EEOC because, even if it did, she has still failed to state a claim upon which relief could be granted.

To state a claim for retaliation under the ADA, a plaintiff must allege that "(1) she engaged in a statutorily protected activity, (2) the retaliator was aware of the protected activity, (3) she suffered an adverse employment action, and (4) a causal connection exists between the protected activity and the adverse action." *Pack v. Ill. Dep't of Healthcare & Family Servs.*, No. 13-cv-8930, 2014 U.S. Dist. LEXIS 101552,

8

at *14 (N.D. Ill. July 25, 2014). A plaintiff cannot use the ADA's anti-retaliation provisions to take a second bite at an unsuccessful failure to accommodate claim. *Id.* at 14–15; *Moore-Fotso v. Bd. of Educ. of the City of Chi.*, 211 F. Supp. 3d 1012, 1037–38 (N.D. Ill. 2016) (collecting cases). A failure to accommodate "cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim." *Moore-Fotso*, 211 F. Supp. 3d at 1037. What's more, "[a] retaliation claim based entirely on a failure to accommodate is redundant in a manner not likely intended by Congress." *Santos-Means v. Sheriff's Office of Cook County, Ill.*, No. 12 CV 8804, 2016 U.S. Dist. LEXIS 144649, at *26 (N.D. Ill. Oct. 19, 2016).

Ms. Crawford alleges that the School District unlawfully retaliated against her by "unreasonably refusing to provide a reasonable accommodation" for her disability and by terminating her because of her disability and her request for accommodations. FAC ¶ 53. Because Ms. Crawford's retaliation claim is merely the failure to accommodate claim with a different label, her retaliation claim is equally deficient. *Pack*, 2014 U.S. Dist. LEXIS 101552, at *14 – 15.

Accordingly, Count II of Ms. Crawford's FAC is dismissed without prejudice.

III. Ms. Crawford's claim of racial discrimination can proceed solely on allegations surrounding her termination.

Ms. Crawford alleges that the School District discriminated against her based on her race in three different ways. FAC ¶¶ 38, 40, 41, 43. She claims the School District did not offer her long-term substitute teaching assignments, did not offer her after-school dance program the same support as other school programs, and

9

ultimately terminated her employment after she made public statements that African American employees at Clinton Rosette Middle School had been subject to racial discrimination. *Id.* Because Ms. Crawford's first two allegations were not exhausted before the EEOC, they cannot proceed. Ms. Crawford's allegation concerning her termination, however, was exhausted before the EEOC and adequately states a claim under Title VII. Thus, she may proceed on this claim solely with respect to her termination.

Before a plaintiff may bring her Title VII claims to federal court, she must first exhaust her administrative remedies by filing a charge with the EEOC and receiving a right to sue letter. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). The exhaustion process "gives the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts." *Rush v. McDonald Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). After receiving a right to sue letter, a plaintiff may bring her claims in federal court, so long as the claims "were included in her EEOC charge," or are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez*, 937 F.3d at 1004 (quoting *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005)) (cleaned up).

Claims are alike or "reasonably related" when there is a "reasonable relationship between the allegations in the charge and the claims in the complaint" and "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d

497, 500 (7th Cir. 1994). "[A]t minimum," the charge and complaint "must" allege the "*same conduct* and implicate the *same individuals.*" *Id.* at 501 (emphasis in original).

Ms. Crawford alleges in her charge that the discrimination started on August 21, 2020, and ended on August 31, 2020. Dkt. 20-4, at 1. She states that during this time, she "spoke up regarding and against racism" during "Respondent's public forum." *Id.* She adds that she was discriminated against because of her race and in retaliation "for engaging in protected activity." *Id.*

Ms. Crawford makes absolutely no mention of the allegations surrounding offers for long-term substitute teaching assignments or the allocation of resources for after-school programs. *See id.* Although EEOC charges should be construed liberally in favor of the plaintiff, *Egan v. Palos Cmty. Hosp.*, 889 F. Supp. 331, 337 (N.D. Ill. 1995), Ms. Crawford's FAC asserts conduct too distinct from the allegations in the charge to be considered "like or reasonably related" to the underlying EEOC allegations. *Chaidez*, 937 F.3d at 1004. Thus, her claims that the School District discriminated against her by refusing her long-term substitute teaching assignments and by failing to support her after-school program cannot proceed. But her claim that she was fired because of her race has been exhausted.

Once a claim is exhausted before the EEOC, a plaintiff may then bring her claim in federal court. *Chaidez*, 937 F.3d at 1004. The pleading requirements for Title VII discrimination claims are "minimal." *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017). Indeed, "[a] plaintiff need only identify the type of discrimination, when it occurred, and by whom." *Id.*; *see Carlson v. CSX*

11

*Transportation, Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims."); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) ("We previously stated, on numerous occasions, that a plaintiff alleging employment discrimination under Title VII may allege these claims quite generally."); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("'I was turned down for a job because of my race' is all a complaint has to say."). As Judge Gilbert succinctly said, "It is not hard to plead an employment discrimination case." *Phillips v. Metro Transit Agency*, Case No. 20-cv-744-JPG, 2021 U.S. Dist. LEXIS 181819, at *13 (S.D. Ill. Sept. 23, 2021); *see Thorsen v. Cmty. Unit Sch. Dist. 300*, No. 20-cv-50132, 2021 U.S. Dist. LEXIS 85530 *2 (N.D. Ill. May 5, 2021) ("In fact, it does not take much to plead an employment discrimination case.").

Ms. Crawford alleges that she is "African American," that she "performed her job duties to all legitimate expectations," and that, nevertheless, she was treated less favorably and terminated because of her race. FAC at ¶¶ 12, 18, 60, 62. Such allegations are sufficient to state a claim under Title VII.

Accordingly, Ms. Crawford may proceed on her Title VII termination claim.

IV.  Ms. Crawford's Title VII retaliation claim may proceed.

To plead a claim of retaliation under Title VII, a plaintiff must "allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014);

*Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir.2013). "[O]pposing an unlawful employment practice" is a statutorily protected activity. *Id.*

Ms. Crawford alleges that in June 2020, she spoke at two Dekalb County forums focused on race relations in the county. FAC ¶¶ 35, 38, 40. School Board President Sarah Moses and School Board Members David Seymour and Samantha McDavid attended both forums. *Id.* at ¶¶ 37, 39. At the forums, Ms. Crawford explained that "she and other African-American employees" at Clinton Rosette Middle School "had been subjected to racial discrimination." *Id.* at ¶¶ 38, 40. On September 2, 2020, Ms. Crawford was informed that she was terminated (effective August 31, 2020,) pending Board of Education approval on September 15, 2020. *Id.* at ¶ 44. The Board approved the termination, and on September 16, 2020, the School District informed Ms. Crawford that she had been terminated. *Id.* at ¶ 45.

The School District argues that this claim should be dismissed because, according to the School District, Ms. Crawford only offered a "vague and obscure [complaint]" and did not engage in "protected activity, such as opposing an unlawful employment practice." Dkt. 20-1, at 13. The School District also argues that Ms. Crawford's "statement at a public forum was not made to her employer or within the employment relationship." *Id.* Lastly, the School District suggests that the because the "decision to terminate [Ms. Crawford's] employment had been communicated to her prior to Board action, there is no basis to believe that the Board of Education initiated or pursued such action, as opposed to merely approving a decision by administration." *Id.* at 14.

13

The School District's arguments are unavailing. First, Ms. Crawford's message that African American employees faced racial discrimination clearly conveys her belief that the School District engaged in an unlawful employment practice. Second, drawing all reasonable inferences in favor of Ms. Crawford, *St. John*, 822 F.3d at 389, she adequately alleges that her objection was communicated to her employer because three School Board members, including the School Board President, attended the forums. FAC ¶¶ 37, 39. What's more, the School District glosses over its role in firing Ms. Crawford. Indeed, Ms. Crawford's termination was entirely contingent on the School Board's acquiescence. *Id.* at ¶¶ 44–45. Taking all allegations as true and drawing all reasonable inferences in favor of Ms. Crawford, Ms. Crawford has adequately alleged that the School District retaliated against her for opposing an unlawful employment practice. Accordingly, the School District's request to dismiss Count IV is denied.

V.  Ms. Crawford's request for punitive damages for her Title VII claims is dismissed.

The School District asserts that Ms. Crawford cannot recover punitive damages from it for her Title VII claim because it is a governmental agency or political subdivision, citing *Donald v. City of Chi.*, 539 F. Supp. 3d 912, 922 (N.D. Ill. 2021). Dkt. 20-1, at 14–15. Ms. Crawford "does not contest these arguments." Dkt. 25, at 14. Thus, Ms. Crawford's request for punitive damages is dismissed.

## CONCLUSION

For the foregoing reasons, the School District's motion to dismiss [20] is granted in part and denied in part. Counts I and II of Ms. Crawford's FAC are

dismissed without prejudice. Counts III and IV may proceed consistent with this Memorandum Opinion and Order.

Date: March 9, 2023

_____
Honorable Iain D. Johnston
United States District Judge